UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MARICE HALL, # 401777,                    )
                                          )
                    Plaintiff,            )         Case No. 1:16-cv-5
                                          )
v.                                        )         Honorable Robert J. Jonker
                                          )
WALTER BRUCH, et al.,                     )
                                          )
                    Defendants.           )
_____)

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983.
Plaintiff is currently and inmate at the Marquette Branch Prison.  This lawsuit arises
out of conditions of plaintiff's confinement in 2015 at the Oaks Correctional Facility.
Plaintiff named two employees of the Michigan Department of Corrections as
defendants:  Corrections Officers Walter Bruch and Michael Del Tour.  Plaintiff
alleges that on, May 7, 2015, defendants retaliated against him in violation of his
First Amendment rights and used excessive force against him in violation of his
Eighth Amendment rights.

The matter is before the Court on defendants' motion for summary judgment.
(ECF No. 30).  This motion is the re-filing of an earlier motion, this time in compliance
with Local Civil Rule 7.1(d).  On March 22, 2017, the Court entered an order advising
plaintiff that his response to defendants' earlier motion would be considered as his

response to this motion. [1]  (ECF No. 32).  The order provided plaintiff with an opportunity to supplement his response.  (*Id.*).  Plaintiff filed a supplemental response (ECF No. 33), and defendants' motion is ready for decision.

For the reasons set forth herein, I recommend that plaintiff's claims for declaratory relief be dismissed as moot.  I recommend that plaintiff's claims for damages against defendants in their official capacities be dismissed with prejudice because they are barred by Eleventh Amendment immunity.  I recommend that defendants' motion for summary judgment be granted and that judgment be entered in defendants' favor on all plaintiff's claims for damages against defendants in their individual capacities.

## **Applicable Standards**

### A.    Summary Judgment

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016).  The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a

---

[1] The March 22, 2017, order listed plaintiff's response to defendants' motion (ECF No. 20), but it failed to include plaintiff's declaration (ECF No. 21) and his statement of disputed factual issues (ECF No. 22).  All the documents previously filed by plaintiff (ECF No. 20-22) are considered herein.

matter of law.' " *Rocheleau v. Elder Living Const., LLC*, 814 F.3d 398, 400 (6th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).   The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.   *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *France v. Lucas*, 836 F.3d 612, 624 (6th Cir. 2016).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim.   *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 788 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).   Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings.   *See Ellington v. City of E. Cleveland*, 689 F.3d 549, 552 (6th Cir. 2012).   The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial.   *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012).   "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could

reasonably find for the [non-movant].' " *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 565 (6th Cir. 2016).

B.    Qualified Immunity

Defendants argue that they are entitled to summary judgment on the basis of qualified immunity.  "Once [an] official[ ] raise[s] the qualified immunity defense, the plaintiff bears the burden to 'demonstrate that the official [is] not entitled to qualified immunity.' " *LeFever v. Ferguson*, 645 F. App'x 438, 442 (6th Cir. 2016) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)); *see Hermansen v. Thompson*, 678 F. App'x 321, 325 (6th Cir. 2017).

"A government official sued under section 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014); *see Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015); *Lane v. Franks*, 134 S. Ct. 2369, 2381 (2014).  The first prong of qualified immunity analysis is whether the plaintiff has alleged facts showing that each defendant's conduct violated a constitutional or statutory right.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The second prong is whether the right was "clearly established" at the time of the defendant's alleged misconduct.  *Id.*  Trial courts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

-4-

A qualified immunity defense can be asserted at various stages of the litigation, including the summary judgment stage.  *See English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994).  The qualified immunity inquiry at the summary judgment stage is distinguished from the Rule 12(b)(6) stage in that generalized notice pleading no longer suffices, and the broader summary judgment record provides the framework within which the actions of each individual defendant must be evaluated.  At the summary judgment stage, "the plaintiff must, at a minimum, offer sufficient evidence to create a 'genuine issue of fact,' that is, 'evidence on which a jury could reasonably find for the plaintiff.' "  *Thompson v. City of Lebanon, Tenn.*, 831 F.3d 366, 370 (6th Cir. 2016); *see Gardner v. Evans*, 811 F.3d 844, 846 (6th Cir. 2016).

In *Brosseau v. Haugen*, the Supreme Court examined the underlying purpose of the requirement that the law be clearly established:

> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, misapprehends the law governing the circumstances she confronted. . . .  Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.  If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

543 U.S. 194, 198 (2004); *see also Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ("The dispositive question is whether the violative nature of the particular conduct is clearly established.") (citation and quotation omitted); *City & County of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) ("An officer cannot be said to have violated a clearly established right unless the right's contours were

sufficiently definite that any reasonable official in his shoes would have understood that he was violating it, meaning that existing precedent placed the statutory or constitutional question beyond debate.") (citations and quotations omitted).  Qualified immunity is an immunity from suit rather than a mere defense to liability.  *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2019 (2014).

The Supreme Court has repeatedly held that the second prong of the qualified immunity analysis " 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' "  *Brosseau v. Haugen*, 543 U.S. at 198 (quoting *Saucier v. Katz*, 533 U.S. at 201); *see White v. Pauly*, 137 S. Ct. 548, 552 (2017). Moreover, courts are "not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced."  *Plumhoff v. Rickard*, 134 S. Ct. at 2023 (citations and quotations omitted); *see White v. Pauly*, 137 S. Ct. at 552.

"The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.' "  *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999) (quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)); *see Shreve v. Franklin County, Ohio*, 743 F.3d 126, 134 (6th Cir. 2014); *T. S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014).  The burden applies to each claim.  *See Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015).

## Proposed Findings of Fact

The following facts are beyond genuine issue.  Plaintiff is currently an inmate at the Marquette Branch prison.  In May 2015, he was an inmate at the Oaks Corrections Facility (ECF).[2]  (Complaint ¶¶ 4-5, ECF No. 1, PageID.6; Plf. Aff. ¶ 1, ECF No. 33-1, PageID.172).  During the period at issue, Corrections Officers Walter Bruch and Michael Del Tour were employed at ECF by the Michigan Department of Corrections.  (Bruch Aff. ¶ 1, ECF No. 31-2, PageID.136; Del Tour Aff. ¶ 1, ECF No. 31-3, PageID.149).

On the morning of May 2, 2015, plaintiff plugged the toilet in his cell and flooded the housing unit.  He was charged with a Class II misconduct for destruction or misuse of property.  That afternoon, plaintiff received another Class II misconduct for disobeying a direct order because he refused to return his food tray.  Plaintiff later entered guilty pleas to both Class II misconduct charges.  (ECF No. 31-3, PageID.156-59).  On the night of May 2, 2015, plaintiff drafted a grievance alleging that, at approximately 9:32 p.m., Officer Bruch subjected him to a derogatory racial remark.

---

[2] Plaintiff's complaint is verified under penalty of perjury.  (Complaint at 7, ECF No. 1, PageID.11).  It is considered as an affidavit in opposition to defendants' motion for summary judgment. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008).  "Verified" arguments and legal conclusions are not evidence, however.  Legal conclusions, whether asserted in an affidavit or verified complaint, do not suffice to create a genuine issue of material fact for trial. *See Medison Am. Inc. v. Preferred Med. Sys., Inc.*, 357 F. App'x 656, 662 (6th Cir. 2009); *see also Stine v. State Farm Fire & Cas. Co.*, 428 F. App'x 549, 550 (6th Cir. 2011) (A "conclusory affidavit bypasses the specific-facts requirement of Federal Rule of Civil Procedure 56 necessary to forestalling summary judgment.").

The grievance was received by ECF's grievance coordinator on May 4, 2015, and it was assigned Grievance No. ECF-2015-05-1222-17A.  (ECF No. 31-2, PageID.146). Plaintiff's grievance was denied at Step I.  (*Id.* at PageID.147).  Plaintiff states that he never received a response to this grievance.  (Complaint ¶ 16, ECF No. 1, PageID.7).  Officer Del Tour had no knowledge that plaintiff had filed a grievance against Officer Bruch.  (Del Tour Aff. ¶ 3, ECF No. 31-3, PageID.149).

On May 7, 2015, Corrections Officers Bruch and Del Tour escorted plaintiff from his cell "to [Resident Unit Manager] Miniard's office for court."[3]  (Bruch Aff. ¶ 4, ECF No. 31-2, PageID.137; Del Tour Aff.¶ 4, ECF No. 31-3, PageID.150).  During such out-of-cell movements, prisoners are handcuffed with their hands behind their backs and the handcuffs are attached to a tether that is controlled by at least one of the escorting officers at all times.  (Complaint ¶ 18, ECF No. 1, PageID.7; Plf. Decl. ¶ 6, ECF No. 21, PageID.100).

Officers Bruch and Del Tour also escorted plaintiff back to his cell.  Plaintiff was angry and threatened to flood his cell.  The officers were able to get plaintiff secured inside his cell and the door closed without incident, then they began the task

---

[3] A Class II misconduct is classified as a minor misconduct and the hearings on such charges are conducted by resident unit managers, captains, and/or lieutenants designated by the warden.  *See* MDOC Policy Directive 03.03.105, ¶¶ B, PP (effective April 9, 2012).  A Class I misconduct is classified as a major misconduct and a prisoner is entitled to far more extensive procedural protections, including a formal hearing conducted before a hearing officer from the Department of Licensing and Regulatory Affairs.  *Id.* at ¶¶ B, M, AA-JJ; *see Peterson v. Johnson*, 714 F.3d 905, 912-13 (6th Cir. 2013).

of attempting to remove plaintiff's handcuffs through the cell door's food slot.  Officer Del Tour controlled the tether lead as Officer Bruch reached through the food slot and attempted to remove the handcuffs.  Plaintiff began pulling away and turned and grabbed Officer Bruch's arm.  Officer Del Tour held the lead in place until Officer Bruch was able to remove the handcuffs.  (Bruch Aff. ¶¶  4, 5, ECF No. 31-2, PageID.137; Del Tour Aff. ¶¶ 4-5, ECF No. 31-3, PageID.150).

Officers Bruch and Del Tour would have taken the same actions if plaintiff had not filed a grievance.  (Bruch Aff. ¶ 5, ECF No. 31-2, PageID.137; Del Tour Aff. ¶ 5, ECF No. 31-3, PageID.150).  Officer Del Tour issued a Class I (major misconduct) charge against plaintiff for assault and battery/staff victim.  (ECF No. 31-3, PageID.152).

On May 15, 2015, plaintiff received a hearing on this major misconduct charge. The hearing officer reviewed the available evidence and heard plaintiff's testimony claiming that he never committed the assault and battery against Officer Bruch, and that he never resisted and pulled on the restraints.  The hearing officer found that plaintiff's testimony was not credible.  Among other things, he rejected plaintiff's claim that that the officers caused the confrontation by tightening the handcuffs.  He found that the statements regarding the incident provided by Officers Del Tour and Bruch were credible.  The hearing officer found plaintiff guilty of the major misconduct charge of committing an assault and battery against Officer Bruch. (ECF No. 31-3, PageID.154-55).  Plaintiff received the sanctions of ten days of detention

and a thirty day loss of privileges.  (*Id.* at PageID.154).

On January 6, 2016, plaintiff filed this lawsuit.  Plaintiff states that, after he had been returned to his cell, the officers passed the tether connected to his handcuffs through the food slot and closed the cell door.  Officer Bruch reached through the food slot.  (Complaint ¶¶ 20-22, ECF No. 1, PageID.8; Plf. Decl. ¶¶ 8-10, ECF No. 21, PageID.100; Plf. Aff. ¶ 5, ECF No. 33-1, PageID.172).  Plaintiff states that Officer Bruch somehow tightened the restraints around his wrists and that Officer Del Tour pulled back on the tether.  Del Tour continued pulling as Officer Bruch attempted to remove the restraints from plaintiff's wrists.  Plaintiff states that he sustained abrasions to his hands and wrists and he has a small scar on his left arm.  (Complaint ¶¶ 23-29, ECF No. 1, PageID.8; Plf. Decl. ¶¶ 11-23, ECF No. 21, PageID.100-01; Plf. Aff. ¶¶ 5-8, ECF No. 33-1, PageID.172).  When plaintiff complained that his wrists were sore, health care was contacted and plaintiff was examined.  (Del Tour Aff. ¶ 4, ECF No. 31-3, PageID.150).  Plaintiff presents no medical evidence in support of his claims against defendants.

## <u>Discussion</u>

## I.  **Mootness**

Plaintiff is an inmate at the Marquette Branch Prison.  Defendants are employed at ECF.  Plaintiff's claims for declaratory relief against defendants are moot.  *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

## II.    Eleventh Amendment Immunity

Plaintiff's claims for damages against defendants in their official capacities are barred by Eleventh Amendment immunity.  The Eleventh Amendment bars suit in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  Michigan has not consented to civil rights suits in federal court.  *See Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004).  A suit against a state officer in his or her official capacity is simply another way of pleading an action against the state.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *VIBO Corp. v. Conway*, 669 F.3d 675, 691 (6th Cir. 2012).  Furthermore, states and their departments are not "persons" within the meaning of 42 U.S.C. § 1983.  *See Will v. Michigan Dep't of State Police*, 491 U.S. at 71.  I find that defendants are entitled to dismissal with prejudice of plaintiff's claims for monetary damages against them in their official capacities.

## III.    Individual Capacity Claims

### A.    Eighth Amendment

The Eighth Amendment limits the power of the states to punish those convicted of a crime.  Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency."  *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton

infliction of pain." *Rhodes*, 452 U.S. at 346.   Among unnecessary and wanton
inflictions of pain are those that are "totally without penological justification." *Id.*

Plaintiff's claims must be analyzed under the Supreme Court authority
limiting the use of force against prisoners.   The analysis must be made in the context
of the constant admonitions by the Supreme Court regarding the deference that
courts must accord to prison or jail officials as they attempt to maintain order and
discipline within dangerous institutional settings. *See, e.g., Whitley v. Albers*, 475
U.S. 312, 321-22 (1986).

Generally, restrictions and even harsh conditions of confinement are not
necessarily cruel and unusual punishment prohibited by the Eighth Amendment.
*Rhodes*, 452 U.S. 347.   The Supreme Court has held that "whenever guards use force
to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied.
*Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Wilkins v. Gaddy*, 559 U.S. 34
(2010).   Not every shove or restraint gives rise to a constitutional violation. *Parrish
v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986).   Under *Whitley*, the core judicial inquiry
is "whether force was applied in a good-faith effort to maintain or restore discipline,
or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7.

The Court "must judge the reasonableness of the force used from the
perspective and with the knowledge of the defendant officer."   *Kingsley v.
Hendrickson*, 135 S. Ct. 2466, 2474 (2015).   In determining whether the use of force
is malicious or sadistic, the Court should evaluate the need for application of force,

-12-

the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 6-7 (citing *Whitley*, 475 U.S. at 321). While the extent of an inmate's injury may help determine the amount of force used by the prison or jail official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins*, 559 U.S. at 37. When prison or jail officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated, "[w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Plaintiff must satisfy both an objective and subjective test to establish a viable Eighth Amendment claim. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). To meet the objective component, the prisoner must be subjected to a serious deprivation. *Wilson*, 501 U.S. at 298. The federal courts recognize that an Eighth Amendment claim based on the excessive use of force must allege more than a simple assault and battery. *See Leary v. Livingston Cty.*, 528 F.3d 438, 445 (6th Cir. 2008); *see also Richmond v. Settles*, 450 F. App'x 448, 454 (6th Cir. 2011).

Plaintiff falls short of presenting evidence on which a reasonable trier of fact could find in his favor on the objective or subjective components of his Eighth Amendment claims. On the present record, no reasonable trier of fact could find that defendants subjected plaintiff to a serious deprivation. Plaintiff committed an

assault and battery against Officer Bruch as he was attempting to remove plaintiff's handcuffs and defendants' use of force in response to plaintiff's attack was so minimal that plaintiff sustained only minor wrist abrasions.

A key consideration in this case is the preclusive effect, if any, that should be given to the state agency's administrative factual findings made by the hearing officer when he found plaintiff guilty of committing an assault and battery against Officer Bruch. The seminal Sixth Circuit cases in this area are *Peterson v. Johnson*, 714 F.3d 905 (6th Cir. 2013) and *Roberson v. Torres*, 770 F.3d 398 (6th Cir. 2014).

In *Peterson v. Johnson*, the Sixth Circuit examined the preclusive effect of a Michigan hearing officer's decision finding that prisoner Peterson committed the major misconduct of an assault and battery by grabbing Corrections Officer Johnson's hand, necessitating the use of force in response. The Sixth Circuit found that the Supreme Court's decision in *University of Tennessee v. Elliott,* 478 U.S. 788 (1986) established the proper framework. " '[W]hen a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties had an adequate opportunity to litigate, federal courts must give the agency's fact finding the same preclusive effect to which it would be entitled in the State's courts.' " *Peterson*, 714 F.3d at 912 (quoting *Elliott*, 478 U.S. at 799). The Sixth Circuit held that the hearing officer's decision "clearly qualifie[d] as having been rendered in a 'judicial capacity.' " 714 F.3d at 912. The Court of Appeals also found that the second and third *Elliott* criteria were satisfied. The hearing officer resolved a disputed issue

-14-

of fact that was properly before him when he rejected prisoner Peterson's factual account and found, as a predicate to his ultimate ruling that Peterson committed an assault and battery, that Peterson grabbed Johnson by the right hand and pulled Johnson's hand into the cell as the door was closing. *Id.* at 913.  Further, the prisoner had an adequate opportunity to litigate the factual dispute.  "Not only did he have and exercise a plethora of statutory protections, any objections that he had to the major misconduct hearing itself could have been appealed within the department and then, if necessary, to state court." *Id.*

The Sixth Circuit then addressed the fourth *Elliott* criterion, "which provides that if the prior three are satisfied, then we must give the agency's finding of fact the same preclusive effect it would be given in state courts." *Peterson*, 714 F.3d at 913. The hearing officer's factual findings were entitled to preclusive effect under Michigan law.[4]  The agency's determination was adjudicatory in nature, the prisoner had a right to appeal the determination in state court, and there was mutuality of estoppel. *Id.* at 914.  The agency's decision resolved the "dispute over who grabbed

---

[4] "The test Michigan courts apply when deciding whether to give preclusive effect to an agency's factual determination proceeds in two stages and tracks several of the *Elliott* factors.  The first stage applies to all cases where preclusion is claimed, and asks whether:  (1) a question of fact essential to the judgment was actually litigated and determined by a valid final judgment; (2) the parties had a full and fair opportunity to litigate the issue; and (3) there is mutuality of estoppel.  The next stage applies only to parties seeking to preclude litigation of a factual issue that was decided by an administrative agency.  It asks whether: (1) the administrative decision was adjudicatory in nature; (2) there was a right to appeal from the decision; and (3) the legislature intended to make the decision final absent an appeal." *Peterson*, 714 F.3d at 914.

whom and that this resolution was essential to the hearing officer's judgment, which was that Peterson had committed an assault and battery precisely by grabbing Johnson's hand." *Id.* The issue was actually litigated and determined by a valid and final judgment. *Id.* The prisoner had a full and fair opportunity to litigate his factual allegations. *Id.* at 914-17. The Michigan legislature clearly intended to make a hearing officer's decision final in the absence of an appeal. *Id.* at 917. The Michigan courts would give preclusive effect to the hearing officer's factual finding that Peterson grabbed Johnson's hand precluded a contrary finding in federal court. *Id.* The Sixth Circuit held that no reasonable jury could return a verdict in Peterson's excessive force claim. *Id.* at 917-18.

In *Roberson v. Torres*, the Sixth Circuit emphasized that the "question of preclusion cannot be resolved categorically, as it turns on case specific questions such as what issues were actually litigated and decided, and whether the party to be precluded had sufficient incentives to litigate those issues and a full and fair opportunity to do so – not just in theory, but in practice. It likewise turns on the court's sense of justice and equity, which may require a case-by-case analysis of surrounding circumstances." 770 F.3d at 404-05 (citations and quotations omitted).

Although preclusion must be addressed on a case-by-case basis, this case is virtually indistinguishable from *Peterson v. Johnson*. Whether plaintiff actively resisted and grabbed Officer Bruch's hand and whether the escorting officers caused the confrontation by tightening plaintiff's handcuffs were factual issues that were

-16-

actually litigated and decided by the hearing officer. Plaintiff had sufficient incentives to litigate those issues and a full and fair opportunity to do so. Enforcement of the preclusion is consistent with the Court's sense of justice and equity.

No reasonable trier of fact could find in plaintiff's favor on the subjective component of his Eighth Amendment claims. Defendants responded to plaintiff's assault and battery against Officer Bruch with minimal force. A far more forceful response would have been justified without violating the Eighth Amendment's Cruel and Unusual Punishments Clause. No reasonable trier of fact could find on the present record that defendants acted maliciously and sadistically for the purpose of causing plaintiff serious harm. *See* Hudson, 503 U.S. at 7; *Peterson*, 714 F.3d at 918.

B.     First Amendment

Retaliation based upon a prisoner's exercise of his constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. In the context of a motion for summary judgment, the causation element is evaluated pursuant to the burden-shifting standard articulated by the Supreme Court in *Mount Healthy City School*

-17-

*District Board of Education v. Doyle*, 429 U.S. 274 (1977).  *See Thomas v. Eby*, 481 F.3d 434, 441-42 (6th Cir. 2007).  Pursuant to this standard, plaintiff must show that his protected conduct was a motivating factor in defendant's action.  Even if plaintiff makes such a showing, defendant is entitled to summary judgment if he demonstrates that he would have taken the same action in the absence of the protected conduct.  *Id.*

Defendants do not claim entitlement to summary judgment on the basis that plaintiff fails to satisfy either the first or the second prong of a First Amendment retaliation claim.  Defendants argue that plaintiff has not presented evidence that the use of force by defendants was for the purpose of retaliating against plaintiff for filing a grievance.  Further, defendants argue that they are entitled to summary judgment because they have shown that they would have taken the same actions in the absence of any grievance.  (Defendants' Brief at 10-11, ECF No. 31, PageID.129-30).

Plaintiff offers no response to defendants' arguments.  His initial brief (ECF No. 20) does not mention the First Amendment, retaliation, or causation.  In his supplemental brief, plaintiff states that he "stands on the arguments that are already before this Court dealing with this argument.  He does not feel the need, at this time, to take up any more of the Court's time unnecessarily, unless the need arises at a later date."  (Supplemental Brief at 5, ECF No. 33, PageID.166).

Plaintiff has not presented evidence on which a reasonable trier of fact could

-18-

find in his favor on the causation element.  Further, defendants have shown that they would have taken the same actions if plaintiff had not filed a grievance.  Defendants are entitled to judgment in their favor as a matter of law on plaintiff's First Amendment retaliation claims.

      C.    <u>Qualified Immunity</u>

Defendants are also entitled to summary judgment on the basis of qualified immunity.  Plaintiff has not presented evidence sufficient to satisfy the first prong of the qualified immunity analysis on his claims for the reasons stated in the previous sections.

The second prong of the qualified immunity analysis " 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' " *Brosseau v. Haugen*, 543 U.S. at 198.  It was plaintiff's burden to convince the Court that the law was clearly established when defendants acted on May 7, 2015.  *See  Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015).; *Shreve v. Franklin County, Ohio*, 743 F.3d 126, 134 (6th Cir. 2014).  Plaintiff's conclusory statements that his rights were clearly established (Plaintiff's Brief at 4, ECF No. 20, PageID.97; Supplemental Brief at 7, ECF No. 33, PageID.167) do not suffice.  Plaintiff has not cited any case or cases that as of May 7, 2015, clearly established the constitutional rights that he claims each defendant's actions violated.

## **Recommended Disposition**

For the reasons set forth herein, I recommend that plaintiff's claims for declaratory relief be dismissed as moot.  I recommend that plaintiff's claims for damages against defendants in their official capacities be dismissed with prejudice because they are barred by Eleventh Amendment immunity.  I recommend that defendants' motion for summary judgment (ECF No. 30) be granted and that judgment be entered in defendants' favor on all plaintiff's claims for damages against defendants in their individual capacities.


Dated:  January 12, 2018            /s/  Phillip J. Green
                                    PHILLIP J. GREEN
                                    United States Magistrate Judge


## **NOTICE TO PARTIES**

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).